**EXHIBIT 1**

Case 1:10-cv-00536-RCL   Document 10-2   Filed 06/13/11   Page 1 of 4

## DECLARATION OF WILLIAM K. LIETZAU

Pursuant to 28 U.S.C. § 1746, I, William K. Lietzau, hereby declare the following:

1. I am the Deputy Assistant Secretary of Defense for Detainee Policy. I have held this position since February 16, 2010. In this capacity, I am responsible for developing policy recommendations and coordinating global policy guidance relating to individuals captured or detained by the Department of Defense ("DoD").

2. In late 2009, all of the detainees at the Bagram Theater Internment Facility ("BTIF"), which is located on Bagram Airfield in Afghanistan, were transferred to a newly constructed detention facility known as the Detention Facility in Parwan ("DFIP"). The DFIP is located on the outer perimeter of Bagram Airfield. This location is intended to facilitate its eventual transfer to the Government of the Islamic Republic of Afghanistan ("GIRoA").

3. The Combined Joint Interagency Task Force 435 ("CJIATF 435"), with the concurrence of General David Petraeus, Commander, U.S. Forces Afghanistan ("USFOR-A"), has begun the process of transitioning detention operations at the DFIP to the GIRoA.[1] This process began in January 2011, when CJIATF 435 turned over a detainee housing unit to the Afghan Ministry of Defense. This housing unit is being guarded by an Afghan guard force with the support of personnel from CJIATF 435.[2] The speed of such transition has been and will continue to be dependent on, *inter alia*, operational conditions, Afghan judicial capacity, and the point at which the GIRoA is fully trained, equipped, and able to detain insurgents securely and to perform its detention, prosecution, and incarceration responsibilities in accordance with its international obligations and Afghan law.[3] The GIRoA has indicated that ultimately it intends to utilize the DFIP to detain insurgents for "crimes against the security of the state" (some of whom are currently in other prison facilities in Afghanistan).

4. CJIATF 435 is also in the process of training an Afghan National Army ("ANA") military police brigade, including ANA guard force elements to operate the DFIP when it is transitioned to the Afghan Ministry of Defense. CJIATF 435 intends to provide the GIRoA continuing

---

[1] CJIATF 435, a part of US Forces Afghanistan, has the responsibility for U.S. detention operations in Afghanistan, including the care and custody of detainees at the DFIP and oversight of the detainee review process.

[2] My prior declarations noted the DoD's intention to transfer two additional detainee housing units to the Afghan Ministry of Defense upon completion of construction of the facilities and the training of a sufficient number of Afghan guards to operate them. This transfer has not yet occurred for several reasons, including on-going training of the Afghan guard force and a slower pace of GIRoA trials than the DoD anticipated (resulting in fewer convicted criminals being available for transfer to GIRoA custody and control than expected).

[3] Since 2009, the DoD has been transitioning detention operations and facilities in Iraq, and U.S. Central Command will draw on lessons learned and best practices developed during that successful experience to ensure that the transition of detention operations in Afghanistan is a smooth one and that the turnover process is accomplished responsibly.

mentoring and other support at the DFIP during the early stages of the GIRoA's assumption of responsibility.

5. In order to expedite transition of the DFIP to the GIRoA for purposes of consolidating insurgents detained for "crimes against the security of the state," CJIATF 435 is planning for new construction to provide additional detainee housing capacity adjacent to the DFIP. This additional detention capacity will enable U.S. forces to continue to conduct detention operations on a limited basis during the ongoing surge in military operations in Afghanistan and pending the transfer of non-Afghan detainees to their home countries or to third countries. U.S. Forces will eventually transition this additional detention capacity to the GIRoA, consistent with the conditions-based approach discussed above.

6. Consistent with a memorandum of understanding signed by the pertinent Afghan ministries on January 9, 2010, it is expected that once the DFIP is transferred to the GIRoA, it will become part of a larger Afghan Justice Center in Parwan ("JCIP"). It is my understanding that the GIRoA intends to use the JCIP for the pre-trial detention, prosecution, and post-trial incarceration of individuals who commit crimes against Afghan security.

7. An integral part of the transition effort is to help build Afghanistan's legal capacity for prosecuting under Afghan law individuals currently held by the United States at the DFIP. Although construction of the JCIP is not yet complete, the GIRoA is now conducting trials at the JCIP. The first such trial was held at the DFIP with Afghan judges, prosecutors, and defense counsel conducting the trial on June 8, 2010. To date, Afghan authorities have conducted more than 130 trials at the DFIP and JCIP; currently, more than 550 additional cases are actively being prepared for trial.

8. All detainees currently held by U.S. forces at the DFIP, including non-Afghan detainees, receive periodic administrative reviews of their status, threat, and potential for rehabilitation and reintegration, in accordance with the detainee review board procedures initiated in July 2009. In cases involving non-Afghan detainees where the result of the detainee's periodic review indicates that the detainee's threat may be mitigated by some lawful means other than continued internment by U.S. forces, the United States may seek, in accordance with U.S. policy and applicable international law, to transfer the detainee to the control of other governments when those governments are willing to accept responsibility for ensuring, consistent with their laws, that the detainees will not continue to pose a threat to the United States and its allies and where such transfer would be consistent with the United States' policies relating to the humane treatment of transferees. Once transferred, detainees may be subject to release, detention, investigation, and/or prosecution if appropriate under the receiving country's laws. Such governments can include the government of a detainee's home country, or a country other than the detainee's home country, including a country that may have a law enforcement, prosecution, or other interest in the detainee.

9. Although the DFIP facilities and operations, once transitioned, are designed to support Afghan criminal processes in a stable Afghanistan, Afghanistan presently continues to be an

active theater of war, and the DFIP currently is used, in part, by the United States for detaining enemy forces. As discussed above, however, the DFIP is not intended to serve as a permanent U.S. facility. The United States does not intend to continue to use the DFIP to detain any person pursuant to the Authorization for the Use of Military Force, as informed by the law of war, beyond the cessation of hostilities with the Taliban, al Qaida, and associated forces. The United States has no interest in holding detainees longer than necessary.

10. Drawing on our successful experiences in Iraq will help to ensure that the transition in Afghanistan is accomplished responsibly. U.S. forces will remain involved until the GIRoA has the trained personnel and infrastructure to be able to assume detention operations. Further, as necessitated by the presence of U.S. and coalition forces who are conducting operations in concert with Afghan forces to defeat the Taliban, al Qaeda, and associated forces, U.S. forces may need to maintain some detention capacity in Afghanistan, pursuant to the law of war, as long as military operations continue.

I declare under penalty of perjury that the foregoing is true and correct. Executed on _19 May_, 2011.

WILLIAM K. LIETZAU
Deputy Assistant Secretary of Defense (Detainee Policy)
U.S. Department of Defense

3